IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                      PLAINTIFF/RESPONDENT

VS.                    CASE NO. 5:18-CR-50036-TLB-MEF-1

RICHARD DALE INGRAM, JR.                          DEFENDANT/MOVANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on October 1, 2021.[1]  (ECF No. 45). Defendant simultaneously filed a Memorandum with Points and Authorities (ECF No. 46) in support of his § 2255 motion.  The United States filed its response on December 13, 2021.  (ECF No. 51).  The United States filed an Addendum to Response on December 15, 2021.  (ECF No. 52).  Defendant filed a reply on January 20, 2022.  (ECF No. 53).  The matter is ready for report and recommendation.

## I.      BACKGROUND

On April 17, 2018, Defendant, Richard Dale Ingram, Jr. ("Ingram"), was named in an Indictment charging him with two offenses: distribution of methamphetamine (Count One) and being a felon in possession of a firearm (Count Two).  (ECF No. 1).  Ingram was arrested on May 9, 2017.  (ECF No. 14).  He appeared for arraignment on that same date, at which time he entered a not guilty plea to the Indictment.  (ECF No. 9).  Ms. Anna Williams ("Williams"), an Assistant Federal Public Defender ("AFPD"), was appointed to represent Ingram.  (ECF Nos. 9, 11).  Ingram waived the issue of detention and was ordered detained, and the case was set for jury trial on July

---

1 The motion was received and docketed on October 13, 2021, but Ingram declared under penalty of perjury that he placed the motion in the prison mailing system on October 1, 2021, so by virtue of the "prison mailbox rule" it is considered filed on that date.  Rule 3(d) of the Rules Governing Section 2255 Proceedings.

10, 2018.  (ECF Nos. 9, 13).  At Ingram's request on June 13, 2018, the jury trial was cancelled, and the case was scheduled for a change of plea hearing.  (ECF No. 16).

On June 28, 2018, Ingram appeared with counsel before the Hon. Timothy L. Brooks, United States District Judge, for a change of plea hearing.  (ECF No. 17).  A written Plea Agreement was presented to the Court, in which Ingram agreed to plead guilty to Count Two of the Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (ECF No. 18, ¶ 1).  The Court determined that Ingram's guilty plea was voluntary and supported by an independent factual basis, his guilty plea was accepted, and the Court deferred approval of the Plea Agreement pending completion of a presentence report.  (ECF Nos. 17, 39).

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on November 9, 2018.  (ECF No. 19).  The Government had no objections to the initial PSR.  (ECF No. 24).  Ingram made four objections to the initial PSR.  (ECF No. 23).  His first objection concerned paragraphs 20, 28, and 122 of the PSR, and he objected to the base offense level and contended that he had only one predicate felony – for delivery of cocaine.  *Id.*, p. 1.  He argued that his convictions for terroristic threatening and accomplice to a terroristic act, reported in paragraph 42 of the PSR, were not crimes of violence.  In making this argument, Ingram recognized that in *United States v. Myers*, 896 F.3d 866 (8th Cir. 2018), the Eighth Circuit Court of Appeals had ruled that terroristic threatening under Ark. Code Ann. § 301(a)(1)(A) is a crime of violence, but he wanted to preserve his right to appeal the issue.  He also asserted that a conviction for being an accomplice to a terroristic act does not require that all the elements of the underlying offense be met, and therefore, it is not a crime of violence.  *Id*.  He contended that his base offense level should be 20.  *Id*.

Ingram's second objection to the initial PSR concerned the enhancement for possessing a firearm in connection with another felony offense reported in paragraph 21. (ECF No. 23, p. 2). He argued that the firearm was found with a digital scale, which would be simple possession of drug paraphernalia – a misdemeanor offense in Arkansas. *Id*. His third and fourth objections were denials of the conduct reported in paragraphs 92 and 94, respectively. *Id*.

In an Addendum to the final PSR, the Probation Officer responded to Ingram's objections. (ECF No. 25-1). Regarding Ingram's first objection, the Probation Officer stated that paragraphs 20, 28, 122, and related paragraphs, were correct based on the parameters set forth in U.S.S.G. § 4B1.2(a)(1) and Ark. Code Ann. § 5-13-301. *Id*., p. 1. It was noted that Ingram's conviction for being an accomplice to a terroristic act was not considered as a predicate offense for the determination of the base offense level under U.S.S.G. § 2K2.1(a)(2). *Id*. Because Ark. Code Ann. § 5-13-301 criminalized both threats to cause "death or serious physical injury" or "substantial property damage" to another person, the Probation Officer found the statute to be divisible and used the modified categorical approach, which permits consideration of charging documents, to determine whether Ingram's offense was a crime of violence. *Id*., pp. 1-2. The felony Information charging Ingram with terroristic threatening alleged that Ingram, "after having previously fired shots into the victim's residence, [Ingram] threatened to kill her and her mother." Finding that such alleged conduct involved the threatened use of physical force against another person as an element of the offense, the Probation Officer concluded that the offense qualified as a crime of violence. *Id*., p. 2.

Regarding Ingram's second objection, the Probation Officer noted that Ingram possessed a digital scale "commonly used to portion and pack controlled substances for distribution," and that Ingram distributed methamphetamine. (ECF No. 25-1, p. 2). Referring to Ark. Code Ann. §

5-64-443(b), which provides that a "person who uses or possesses with the purpose to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, or repack a controlled substance that is methamphetamine or cocaine upon conviction is guilty of a Class B felony," the Probation Officer found that Ingram's possession of drug paraphernalia constituted a felony and the enhancement reported in paragraph 21 was applicable. *Id.* The Probation Officer made corrections to the PSR as requested in Ingram's third and fourth objections. These did not affect the guidelines calculation. *Id.*

A final PSR, along with the Addendum discussed above, was submitted to the Court on December 6, 2018. (ECF No. 25). Since Ingram's instant offense was committed after sustaining at least two felony convictions of either a crime of violence or a controlled substance offense, his base offense level was determined to be 24 pursuant to U.S.S.G. § 2K2.1(a)(2). *Id.*, ¶ 20. Because he possessed a firearm in connection with another felony offense, a four-level enhancement was assessed under U.S.S.G. § 2K2.1(b)(6)(B), and this resulted in an adjusted offense level of 28. *Id.*, ¶¶ 21, 25. A three-level reduction for acceptance of responsibility was given. *Id.*, ¶¶ 26, 27. Ingram's total offense level was determined to be 25. *Id.*, ¶ 28. Ingram's extensive criminal history, beginning at age 17 and spanning over 13 pages of the PSR, resulted in a criminal history score of 18, but two additional points were assessed because he was under a criminal justice sentence at the time of the instant offense, resulting in a total criminal history score of 20, placing him in criminal history category VI. *Id.*, ¶¶ 80-82. The statutory maximum term of imprisonment for the offense of conviction was 10 years. *Id.*, ¶ 121. Based upon a total offense level of 25 and a criminal history category of VI, Ingram's advisory guidelines imprisonment range was reported to be 110 to 120 months. *Id.*, ¶ 122.

In a Sentencing Memorandum (ECF No. 27) filed on December 21, 2018, Ingram again argued that his prior Arkansas conviction for terroristic threatening was not a crime of violence, and that his base offense level should be 20.  He also contended that a downward variance was warranted under the 18 U.S.C. § 3553(a) factors.  He withdrew his objection regarding the four-level enhancement for possession of a firearm in connection with another felony offense.

Ingram appeared with counsel for sentencing on January 7, 2019.  (ECF Nos. 30, 40).  Upon inquiry by the Court, Ingram stated he was satisfied with his counsel.  (ECF No. 40, pp. 2-3).  The Court determined that Ingram had an opportunity to read and discuss the PSR and revisions with his counsel.  *Id*. at 4.  The Court then addressed Ingram's objections to the PSR, noting that two had been resolved by the Probation Officer and one had been withdrawn in Ingram's Sentencing Memorandum.  That left one unresolved objection - Ingram's objection that his prior Arkansas conviction for terroristic threatening was not a crime of violence.  *Id*. at 5-7.  Arguing in support of the four-level enhancement, the Government referred to *Myers*, supra, and it offered two exhibits, which were received by the Court: the first, a copy of the Felony Information charging Ingram with terroristic threatening in violation of Ark. Code Ann. § 5-13-301, alleging that "on or about March 20, 2006, after having previously fired shots into the victim's residence, the defendant threatened to kill her and her mother"; and the second, a copy of the Judgment and Commitment Order dated July 5, 2006, on the offense of terroristic threatening.  *Id*. at 7-8, 11-12.  The Government emphasized that "we're not talking about a threat to property here; we're talking about threat to an actual person."  *Id*. at 8.

AFPD Williams argued that the Arkansas statute, Ark. Code Ann. § 5-13-301(a)(1)(A), is not divisible and that the categorical approach, rather than the modified categorical approach, should be applied.  (ECF No. 40, p. 12).  Ms. Williams once again acknowledged Eighth Circuit

precedent to the contrary but stated that she wanted to preserve the issue for further appeal. *Id*.

The Court considered the Shepard documents. (ECF No. 40, p. 15). The Court found, consistent with Eighth Circuit precedent, that Ark. Code Ann. § 5-13-301(a)(1)(A) is divisible, and that Ingram's conviction "would fall into the divisible portion of 5-13-301(a)(1)(A) having to do with threatening to cause death or serious physical injury." *Id*. at 21. The Court overruled Ingram's objection and adopted and approved the final PSR without any further corrections or revisions. *Id*. at 25.

The Court granted the Government's motion for a third level of downward adjustment for Ingram's acceptance of responsibility, and it granted the Government's motion for a one-level downward departure under U.S.S.G. § 5K1.1 for substantial assistance. (ECF No. 40, pp. 28, 31). The Court summarized the Guidelines range for a total offense level of 24 and a criminal history category of VI, finding the advisory range of imprisonment to be 100-120 months. *Id*. at 31. Following argument from counsel and a brief statement from Ingram, the Court acknowledged and discussed the § 3553(a) factors and found that a middle-of-the-guidelines sentence was appropriate. *Id*. at 41-47. The Court imposed a sentence of 110 months imprisonment, followed by three years of supervised release, a $3,900.00 fine, and a $100 special assessment. (ECF No. 30; ECF No. 40, pp. 47-51). Judgment was entered on January 10, 2019. (ECF No. 31).

Ingram appealed to the Eighth Circuit Court of Appeals. (ECF No. 33). He argued error in treating his terroristic threatening conviction as a conviction for a "crime of violence" under U.S.S.G. § 2K2.1(a)(2). (ECF No. 42-1, p. 2). First, he argued that the Arkansas statute under which he was convicted, Ark. Code Ann. § 5-13-301(a)(1)(A), was indivisible and overbroad as it criminalizes threats against property in addition to threats against persons. *Id*. Noting that a statute is indivisible if it lists only one set of elements for a single crime, even if it lists alternative means

of satisfying those elements, whereas a statute is divisible if it lists alternative elements creating different crimes, the Eighth Circuit found that its decision in *Myers* foreclosed Ingram's argument. *Id*. at 3.  In *Myers*, the court held that Ark. Code Ann. § 5-13-301(a)(1)(A) is divisible between threats "to cause death or serious physical injury" and threats "to cause substantial property damage."  928 F.3d at 766.  Ingram did not dispute that he was convicted under the statute for making threats to cause death or serious physical injury, and the Eighth Circuit, under *Myers*, held that his conviction for terroristic threatening counted as a crime of violence under the modified categorical approach.  *Id*.

Ingram also argued on appeal that, even under the modified categorical approach, the divisible portion of the statute under which he was convicted was not a crime of violence because it did not require the use or threatened use of "violent force."  (ECF No. 42-1, p. 3).  Again, the Eighth Circuit found Ingram's argument foreclosed by controlling precedent, *United States v. Boaz*, 558 F.3d 800, 807 (8th Cir. 2009).  *Id*. at 3-4.

In an Opinion and Judgment filed on February 12, 2020, the Eighth Circuit affirmed Ingram's sentence.  (ECF Nos. 42-1, 42-2).  The Mandate from the Eighth Circuit issued on March 4, 2020.[2]  (ECF No. 42).  Ingram then filed a Petition for a Writ of Certiorari in the United States Supreme Court on June 9, 2020.  (ECF No. 43).  The petition was denied by the Supreme Court on October 5, 2020.  (ECF No. 44).  *Ingram v. United States*, 141 S.Ct. 311 (2020).

On October 1, 2021, Ingram filed his § 2255 motion now before the Court.  (ECF No. 45).  As grounds for relief, Ingram asserts three claims of ineffective assistance of counsel and a Due Process violation.  Ingram contends he received ineffective assistance of counsel when his counsel: (a) failed to object to Ingram's prior Arkansas conviction for delivery of a controlled substance as

---

[2] When no petition for rehearing is filed, a court of appeals' mandate issues 21 days after the entry of judgment.  See Fed. Rules App. Proc. 40(a)(1) and 41(b).

a predicate for enhancement under U.S.S.G. § 2K2.1; (b) failed to raise a *Rehaif*[3] claim on direct appeal; and (c), failed to raise the *mens rea* element under *Mathis*[4] as to Ingram's prior Arkansas conviction for terroristic threatening.  (ECF No. 46, pp. 4-7).  He also asserts a Due Process violation under *Rehaif*.  *Id*. at 8-9.  The United States responded to the motion on December 13, 2021.  (ECF No. 51).  It filed an addendum to its response on December 15, 2021, withdrawing its argument that Ingram's § 2255 motion was untimely.  (ECF No. 52).  Ingram filed a reply on January 13, 2022.  (ECF No. 53).

## II.    DISCUSSION

"A prisoner in custody under sentence ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  A thorough review of Ingram's § 2255 motion and the files and records of this case conclusively shows that he is not entitled to relief, and the denial and dismissal of his § 2255 motion with prejudice is recommended.

---

3 *Rehaif v. United States*, 139 S.Ct. 2191 (2019).
4 *Mathis v. United States*, 136 S.Ct. 2243 (2016).

### A.      Timeliness

In its response, the Government argued that Ingram's § 2255 motion should be denied because it was filed outside of the one-year limitation period.  (ECF No. 51, pp. 5-7.)  Two days later, after having learned that due to the COVID-19 pandemic the United States Supreme Court temporarily extended the filing deadline to petition for a writ of certiorari from 90 days to 150 days and recognizing that Ingram filed his petition for a writ of certiorari in June 2020, within the extended deadline to do so, the United States acknowledged that Ingram's § 2255 motion is timely. (ECF No. 52).  The Court agrees.

A one-year period of limitation applies to motions under 28 U.S.C. § 2255.  This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).

The operative date in this case is "the date on which the judgment of conviction becomes final," as Ingram raises no issue regarding any impediment created by Government action to making his motion, he asserts no right newly recognized by the Supreme Court made retroactive to cases on collateral review, and he makes no claim based on newly discovered evidence.

Judgment was entered on January 10, 2019.  (ECF No. 31).  The Eighth Circuit Court of Appeals affirmed in an Opinion and Judgment issued on February 12, 2020, and it issued its

Mandate on March 4, 2020. (ECF Nos. 42, 42-1, 42-2). Ingram filed a petition for a writ of certiorari in the United States Supreme Court on June 9, 2020, which was more than 90 days but less than 150 days from the date of the Eighth Circuit's Judgment. (ECF No. 43).

Due to COVID-19, the Supreme Court entered an Order on March 19, 2020, extending the deadline to file any petition for a writ of certiorari due on or after the date of the order to 150 days from the date of the lower court judgment, order denying discretionary review, or order denying a timely petition for rehearing.[5] The extension from 90 days to 150 days was later rescinded by Order of the Supreme Court entered on July 19, 2021.[6]

The Supreme Court's temporary extension gave Ingram 150 days, or until August 1, 2020, to file a petition for a writ of certiorari. He did so on June 9, 2020, thus his petition for a writ of certiorari was timely filed, and his one-year limitation period to file a § 2255 motion began on October 5, 2020, the date his petition for a writ of certiorari was denied by the Supreme Court. *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("[f]inality attaches when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Ingram filed his § 2255 motion on October 1, 2022, which is within the one-year limitation period.

**B.      Standards Applicable to Ineffective Assistance of Counsel Claims**

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id.*

---

5 Miscellaneous Order, March 19, 2020, https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf.
6 Miscellaneous Order, July 19, 2021, https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf.

at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689.

Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable."  *United States v. Rice*, 449 F.3d 887, 897 (8th

Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Courts also "do not use hindsight to question

counsel's performance," but instead must analyze it according to counsel's situation at the time of

the allegedly incompetent act or omission.  *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir.

1991).  If one fails to establish deficient performance by counsel, the court need proceed no further

in its analysis of an ineffective assistance of counsel claim.  *United States v. Walker*, 324 F.3d

1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id*. at 694.  The United States Supreme Court has clarified that the

proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant

of a fair trial, a trial whose result is reliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)

(quoting *Strickland*, 466 U.S. at 687).

### C.    Failure to Object to Ingram's Prior Arkansas Conviction for Delivery of a Controlled Substance as a Predicate for Enhancement Under U.S.S.G. § 2K2.1

In amended objections to the initial PSR, Ingram's counsel argued that Ingram "only has

one predicate felony for delivery of cocaine."  (ECF No. 23, p. 1).  Ingram's first claim of

ineffective assistance of counsel concerns the failure of his attorney to object to use of his prior

Arkansas conviction for delivery of a controlled substance as a predicate for the four-level

enhancement under U.S.S.G. § 2K2.1.  (ECF No. 46, pp. 4-5).  He argues that delivery of a

controlled substance under the Arkansas statute does not qualify as a "controlled substance

11

offense" under U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2(b). He contends the Arkansas statute for "delivery" is overbroad when compared to the federal definition of a "controlled substance offense" because only the Arkansas statute "encompasses soliciting the delivery of a controlled substance." *Id.* He claims that had his counsel objected to use of his prior Arkansas delivery of a controlled substance conviction as a predicate for enhancement under the guidelines, it would have resulted in a base offense level of 20. *Id.* The claim is contrary to settled law, and Ingram has shown neither deficient performance nor prejudice from counsel's decision not to challenged Ingram's prior Arkansas conviction for delivery of cocaine.

As reported in the final PSR, on October 4, 2013, Ingram was convicted of Delivery of Cocaine and Delivery of a Counterfeit Substance in the Circuit Court of Washington County, Arkansas. (ECF No. 25, ¶ 66). According to court records, Ingram sold 5.6 grams of cocaine to a CI on one occasion, 23 grams of cocaine to a CI on another occasion, and he delivered a counterfeit substance purporting to be cocaine. *Id.*

At the time of Ingram's conviction, delivery of cocaine was proscribed in Ark. Code Ann. § 5-64-422 Delivery of methamphetamine or cocaine.[7] As it related to Ingram's offense, § 5-64-422(b)(2) provided: "A person who delivers two grams (2g) or more but less than ten grams (10g) by aggregate weight, including an adulterant or diluent, of methamphetamine or cocaine upon conviction is guilty of a Class B felony." The Arkansas statute plainly does not proscribe solicitation, as Ingram contends.

Further, the cases he cites, both from other jurisdictions, do not support his claim. He cites *United States v. Crum*, 934 F.3d 963 (9th Cir. 2019)[8], where the district court agreed with Crum's argument that neither soliciting delivery nor offering to sell was included in the federal definition

---

7 The statute was amended in 2021 to include heroin in the section heading and throughout the section.
8 He provides only a partial citation, to the district court case number, and the date of the Ninth Circuit's decision.

of a "controlled substance offense," thus rendering Oregon Revised Statutes § 475.890 overbroad. But Ingram ignores that the Ninth Circuit Court of Appeals reversed the district court, finding that its decision in *United States v. Shumate*, 329 F.3d 1026 (9th Cir. 2003) controlled, and that under its precedent the definition of a "controlled substance offense" in U.S.S.G. § 4B1.2 encompassed solicitation offenses.  934 F.3d at 965-66.  It thus concluded that Crum's conviction under Oregon Revised Statutes § 475.890 for delivery of methamphetamine qualified as a "controlled substance offense," as that term is defined in § 4B1.2 of the Guidelines.  *Id*. at 967.

Ingram also relies on *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), in which the Fifth Circuit found that the defendant's prior Texas conviction for delivery of heroin did not qualify as a controlled substance offense under the career offender enhancement of the guidelines. *Hinkle* is inapposite to the present case.

The Texas statute of conviction in *Hinkle*, Texas Health & Safety Code § 481.112(a), provided that an offense was committed if the accused "knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance."  A separate statute, § 481.002(8), defined the term "deliver" to include "offering to sell a controlled substance."  *Id*. at 572.  The government conceded in *Hinkle* that if he were convicted of delivering a controlled substance "by offering to sell" that substance, the crime would not come within the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2; but it contended that a review of the indictment showed that he "knowingly delivered" a controlled substance "by actually transferring said controlled substance." *Id*.  The Fifth Circuit held that the Supreme Court's decision in *Mathis* led to the conclusion that the definition of "delivery" in § 481.002(8), as authoritatively interpreted by the Texas Court of Criminal Appeals, set forth various means of committing an offense and did not set forth in the disjunctive the elements of separate offenses.  *Id*. at 574.  As in *Mathis*, the court in *Hinkle* noted

13

that "a state court decision definitively answers the question" of whether "listed items" in a statute "are elements or means," and that Texas state courts construing the statutes in question had held that the method used to deliver a controlled substance is not an element of the crime.  *Id*. at 575 (citations omitted).

Here, the Arkansas statute in question, Ark. Code Ann. § 5-64-422, criminalizes the delivery of controlled substances.  Ark. Code Ann. § 5-64-101(6) defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer" of a controlled substance from one person to another in exchange for money or anything of value.  Unlike the Texas definitional statute involved in *Hinkle*, which explicitly included "offering to sell a controlled substance," the Arkansas statute does not define "delivery" to include solicitation or an offer to sell.  Nor have Arkansas courts interpreted the statute to encompass solicitation or an offer to sell.  Thus, the Arkansas statute underlying Ingram's prior conviction for delivery of cocaine falls squarely within the scope of U.S.S.G. § 4B1.2.

The Eighth Circuit has also previously held that convictions under the Arkansas statute are correctly counted as "controlled substance offenses" for purposes of guidelines enhancement.  *See United States v. Broadway*, 815 F. App'x 95 (8th Cir. 2020) (defendant's prior Arkansas convictions for delivery of cocaine and attempted delivery of cocaine qualify as "controlled substance offenses" under the Sentencing Guidelines); *United States v. Walton*, 840 F. App'x 46 (8th Cir. 2021) (prior felony convictions under Arkansas law for possession of marijuana and ecstasy with purpose to deliver properly considered predicates for guidelines enhancement).  *See also United States v. Reese*, 538 F. App'x 739, 740 (8th Cir. 2013) (rejecting claim that a crime of "delivery" rather than "distribution" of a controlled substance is not a predicate offense).

When a sentencing argument has no merit, there is no ineffective assistance of counsel in

14

declining to advance it.  *Haney v. United States*, 962 F.3d 370, 374 (8th Cir. 2020).  Ingram's argument that his prior Arkansas conviction for delivery of cocaine was not a "controlled substance offense" for purposes of guidelines enhancement has no merit, and his counsel's decision not to make that argument cannot be faulted.

### D.    Failure to Raise a *Rehaif* Argument on Direct Appeal

While Ingram's case was on direct appeal to the Eighth Circuit, the United States Supreme Court issued its decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019).  In his § 2255 motion, Ingram states that he inquired with counsel as to whether a *Rehaif* argument could be made in his direct appeal, and that his counsel informed him that a *Rehaif* argument could not be raised on direct appeal.  (ECF No. 46, p. 5).  He asserts that his counsel thus deprived him of a "plain error" analysis of the issue pursuant to Fed. R. Crim. P. 52(b).  *Id*.  The claim fails because Ingram cannot establish that any error of counsel in failing to raise a *Rehaif* argument on direct appeal affected his substantial rights.

The Eighth Circuit's decision in *United States v. Coleman*, 961 F.3d 1024 (8th Cir. 2020), lays out the analytical framework for plain error review of a *Rehaif* claim.  There, as here, the Supreme Court's opinion in *Rehaif* came shortly after the defendant's sentencing.  On appeal, Coleman contended: first, that because he was not informed of the fourth essential element of a § 922(g) offense, his guilty plea was unconstitutionally invalid; and second, that his guilty plea violated Fed. R. Crim. P. 11 because the district court did not inform him of the nature of the charge to which he was pleading guilty under Rule 11(b)(1)(G) or determine that there was a factual basis for the guilty plea under Rule 11(b)(3).  As these arguments had not been raised before the district court, the Eighth Circuit reviewed for plain error.  *Id*. at 1027.  In the instant case, the Government concedes that had Ingram raised the *Rehaif* issue on appeal, the appellate

court could have reviewed his case for plain error.  (ECF No. 51, p. 12).

Had Ingram raised the *Rehaif* issue on direct appeal for purposes of plain error review, he would have needed to show: (1) an error, (2) that is plain, and (3) that affects his substantial rights. *Coleman*, 961 F.3d at 1027 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).  The Government admits that Ingram meets the first two parts of the test, noting that the Eighth Circuit likely would have found that Ingram's guilty plea was "constitutionally invalid because he did not understand the essential elements of the offense to which he pleaded guilty."  (ECF No. 51, p. 12).  But, as in *Coleman*, it is the third part of the test that undermines Ingram's argument, as he cannot show that any error on this issue affected his substantial rights.

One who has pleaded guilty to an offense may fulfill his burden under the substantial-rights prong of plain error review by demonstrating "a reasonable probability that, but for the error, he would not have entered the plea."  *Coleman*, 961 F.3d at 1030 (citations omitted).  Notably, Ingram does not allege that he would not have pleaded guilty, nor does he argue that he did not otherwise know his status as a felon when he possessed the gun.

The unique facts in *Rehaif* illustrate the point concerning a defendant's knowledge of his status as one prohibited from possessing a firearm.  The defendant in *Rehaif* entered the United States on a non-immigrant student visa to attend university.  The university dismissed him for poor grades and told him that his "immigration status" would be terminated unless he transferred to a different university or left the country.  Rehaif did neither.  Then, after visiting a firing range where he shot two firearms, the government prosecuted him for possessing firearms as an alien unlawfully in the United States.  139 S.Ct. at 2194.  Under such circumstances, the Supreme Court noted that "a defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purpose require."  *Id.*

at 2198.  There was, in other words, a legitimate question regarding Rehaif's knowledge of his status as one prohibited from possessing a firearm.

Here, however, there is no question of Ingram's knowledge of his status as a felon when he possessed the gun – and when he subsequently pleaded guilty to doing so.  As the PSR reflects, Ingram had numerous felony convictions involving multi-year sentences prior to committing the instant offense.  (ECF No. 25, ¶¶ 38, 42, 57, 66).  *See United States v. Welch*, 951 F.3d 901, 907 (8th Cir. 2020) (defendant had served several sentences longer than one year for felony convictions, and it was not reasonably probable that if the government had to prove defendant's knowledge of a previous conviction for "a crime punishable by imprisonment for a term exceeding one year" he would have been acquitted); *see also United States v. Hollingshead*, 940 F.3d 410, 415 (8th Cir. 2019) (finding no plain error when the defendant was previously incarcerated for a year or more).  Moreover, Ingram had twice before been convicted for unlawful possession of a firearm.  *Id*., ¶¶ 40, 57.

At the time of the instant offense conduct, Ingram was on state supervision following his 2013 conviction for delivery of cocaine.  (ECF No. 25, ¶ 66).  His conditions of release in that case, which were signed by Ingram, expressly provide that he must not "own, possess, use, pawn, sell or have under your control any firearm (or imitation) or other dangerous weapon, or be in the company of any person possessing such weapons."  (ECF No. 51-3).

Additionally, Ingram admitted he was a convicted felon in his written plea agreement in this case.  (ECF No. 18, ¶ 4(a)).  During his change of plea hearing, Ingram admitted that when officers came to search his residence, he attempted to flee out a back window.  (ECF No. 39, pp. 21-22).  During their search of Ingram's residence, officers found a loaded .22 caliber pistol in a toilet tank in the bathroom, and Ingram admitted the firearm belonged to him and that he had

obtained it "on the street." *Id*. The Court agrees with the Government that from those facts alone, one can reasonably infer that Ingram was aware that he was prohibited from possessing a firearm. *Rehaif*, 139 S. Ct. at 2198 ("knowledge can be inferred from circumstantial evidence").

Challenging his guilty plea or sentence under *Rehaif* on plain error review on direct appeal would have been frivolous. Ineffective assistance of counsel cannot be based on the failure to raise a meritless argument. *Strickland*, 466 U. S. at 689 ("counsel does not render ineffective assistance by failing to make frivolous arguments"); *see also Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). And as demonstrated by the facts in this case, Ingram cannot show that the failure to seek plain error review under *Rehaif* on direct appeal affected his substantial rights. Accordingly, this ground for relief fails.

**E.     Failure to Argue Mens Rea Element as to Prior Terroristic Threatening Conviction**

Ingram's third claim of ineffective assistance of counsel is his argument that counsel failed to raise the *mens rea* element under *Mathis* as to his prior Arkansas conviction for terroristic threatening. Ingram acknowledges that his counsel did object to use of his prior Arkansas conviction for terroristic threatening for purposes of guidelines enhancement, but he contends "counsel's argument lacked one critical and crucial issue – *mens rea*." (ECF No. 46, p. 6). More specifically, he argues that the "injury to persons" and "injury to property" components of the Arkansas statute are different means of satisfying a single *mens rea* element, and not alternative elements defining different crimes, and therefore, "the categorical approach's 'demand' for 'certainty' has not been met." *Id*. at 7.

The record plainly shows, however, that this "means, not elements" argument *was* raised by counsel in an objection to the PSR (ECF Nos. 22, 23), in a Sentencing Memorandum (ECF No. 27, pp. 2-6), in argument at sentencing (ECF No. 40, pp. 6-7, 11-14), and on direct appeal (ECF

No. 42-1, p. 2-3).  As the Government correctly notes in its response: "This *Mathis* argument was vigorously briefed and argued, thoughtfully decided against him multiple times, for good reason and supported by convincing authority.  Both the District Court and Court of Appeals have explained in detail why Ingram is incorrect here …"  (ECF No. 51, p. 15).

Ingram now raises the issue again in the form of an ineffective assistance of counsel claim. He may not do so.  "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2855."  *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)).  *See also United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005) ("we find the present claim to be the same claim in different clothes, and we will not reconsider the issue on collateral review"); *Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring opinion) ("[s]ince *Kaufman*[9] federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal"); *Loc Huu Bui v. United States*, 2014 WL 582954, at p. 8 (E.D.N.C. 2014) ("a petitioner may not circumvent an adverse ruling on direct appeal by recasting it as an ineffective assistance of counsel claim"); and, *Dowdell v. United States*, 859 F.Supp.2d 176, 179 (D.Mass. 2012) ("[i]t is settled law that a petitioner may not revive claims already decided on direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition").

This claim must properly be denied.

### F.    Due Process *Rehaif* Claim

In addition to claiming ineffective assistance of counsel for failing to raise a *Rehaif* argument on direct appeal for plain error review, Ingram also asserts a stand-alone Due Process

---

9 *Kaufman v. United States*, 394 U.S. 217 (1969).

claim under *Rehaif*.  (ECF No. 46, pp. 8-9).  For the same reasons his ineffective assistance of counsel claim under *Rehaif* fails as discussed above, this claim also fails.

The claim has also been procedurally defaulted.  Ingram asserts that his guilty plea was involuntary under the Supreme Court's ruling in *Rehaif*, but the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.  Since Ingram did not attack the voluntariness and intelligence of his guilty plea on direct appeal, his claim is procedurally defaulted.  *Mabry v. Johnson*, 467 U.S. 504, 508 (1984); *see also United States v. Fleming*, 2020 WL 5407911 at *1 (D. Minn. Sept. 9, 2020) (finding procedural default when *Rehaif* claim not raised on direct appeal) (citing *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000)).

To overcome this procedural default, Ingram must show either (1) cause and actual prejudice, or (2) actual innocence.  *Bousley*, 523 U.S. at 622.  Even if Ingram could show cause for his procedural default, he cannot show actual prejudice.  He does not allege that if he had known that knowledge of his status as a prohibited person was an element of the offense, that he would not have entered a guilty plea and would have gone to trial.  *See United States v. Caudle*, 968 F.3d 916, 921-22 (8th Cir. 2020) (citing *Coleman*, 961 F.3d at 1030, and *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).  Nor is actual innocence available to him.  He does not assert actual innocence in his § 2255 motion and brief, only that *Rehaif* "would likely impact [my] case."  (ECF No. 46, p. 8).  As discussed above regarding his inability to show that his substantial rights have been affected, he cannot show that "in light of all the evidence it is more

likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (cleaned up).  Ingram's knowledge of his status as a felon and a person prohibited from possessing a firearm at the time of the instant offense is beyond serious dispute.

Ingram's Due Process claim under *Rehaif* has been procedurally defaulted and affords him no § 2255 relief.

### III.    NO EVIDENTIARY HEARING IS WARRANTED

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting from *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985).  Such are the circumstances in this case where Ingram has set forth insufficient factual and legal support for his claims.  Accordingly, the summary dismissal of Ingram's § 2255 Petition without an evidentiary hearing is appropriate.

### IV.    NO CERTIFICATE OF APPEALABILITY IS WARRANTED

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case.  *Slack v. McDaniel*, 529 U.S. 473 (2000).  Ingram has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### V.    CONCLUSION

For the reasons and upon the authorities discussed above, Ingram's grounds for relief are unsupported by the record in this case, have been previously decided adversely to him on direct

appeal and are not cognizable in this § 2255 proceeding, or have been procedurally defaulted.

It is, therefore, recommended that Ingram's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 45) be **DISMISSED with PREJUDICE**.

It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of December 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE